UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

OXFORD ASSET MANAGEMENT, LTD., )
et al.,                        )
                               )
           Plaintiffs,         )
                               )
      -vs-                     )   Case No. 98-CIV-2972
                               )   Judge Donald H. Middlebrooks
MICHAEL JAHARIS, et al.,       )
                               )
           Defendants.         )

# UNDERWRITERS' REPLY BRIEF
# IN SUPPORT OF THEIR MOTION FOR MANDATORY REVIEW
# UNDER THE REFORM ACT AND FOR THE IMPOSITION OF SANCTIONS

## *Introduction*

This Court properly dismissed plaintiffs' complaint with prejudice, finding that the allegations of the complaint were completely conclusory and wholly unsupported by any facts. The Court further found that "Plaintiffs' counsel has indicated that there is no further information that could be gathered to further specify the allegations of this Complaint." Order Granting Motion To Dismiss, May 19, 1999 at 32. Indeed, the Court had given plaintiffs' counsel every opportunity at oral argument to describe what information they had to support the conclusory allegations of their Complaint, but plaintiffs' counsel had nothing more to offer, except a plea that he be allowed to take discovery to investigate his suspicions.



Defendants brought this motion for sanctions under the Private Securities Litigation Reform Act ("Reform Act") because the Reform Act and Rule 11 of the Federal Rules of Civil Procedure prohibit parties from commencing federal litigation based upon nothing more than mere suspicion. The Reform Act mandates sanctions in such cases to reimburse defendants who have incurred attorneys' fees and costs in defending baseless claims, and to discourage the filing of actions unsupported by facts.

Plaintiffs' counsel have responded to Underwriter Defendants' motion for sanctions by claiming that they spent over 300 hours investigating the case before filing the complaint. With respect to the medical claims asserted in the complaint, plaintiffs claim now, for the first time in this litigation and contrary to their representations at oral argument, that an unnamed consulting expert allegedly provided some information that led plaintiffs' counsel to believe that the complaint had merit. With respect to the sales claims, plaintiffs' counsel does not even attempt to support one of the key claims that they alleged in the complaint and asserted at oral argument (*i.e.*, that the $1.5 million sales figure stated in the Prospectus was false because the sales were allegedly subject to a right of return). With respect to the other sales claims, plaintiffs' counsel adds nothing new to what they unsuccessfully argued in opposition to defendants' motions to dismiss.[1] Finally, plaintiffs argue that the amount of attorneys' fees sought by the Underwriter Defendants' is excessive.

For the reasons discussed below, each of plaintiffs' arguments should be rejected, and Underwriter Defendants' motion for sanctions should be granted.

---

[1]   Indeed, most of plaintiffs' discussion of their sales claims concerns their "omission" theory (*i.e.*, that the Prospectus should have included a few weeks of preliminary prescriptions sales data, presumably drawn from an independent market data service which, in any event, was publicly available to subscribers of the service before the Initial Public Offering). The "omission" theory was not alleged in the Complaint. The Court properly disposed of this eleventh hour attempt at oral argument to avoid dismissal. In any event, for purposes of this motion for sanctions, the "omission" theory is irrelevant because it was not pleaded in the complaint, which is the sole subject of Underwriter Defendants' motion for sanctions.

*Argument*

I.   *The Amount Of Time Plaintiffs' Counsel Allegedly Spent Investigating Their Claims Only Highlights The Groundless Nature Of This Lawsuit.*

Plaintiffs' counsel claim that they spent over 300 hours investigating their claims before filing this lawsuit. Based on full 40 hour work weeks, plaintiffs' counsel would have the Court believe that they spent the equivalent of more than 7 straight weeks working on this case before filing the complaint. It is difficult to assess the accuracy of such an assertion, except to look at the work product that was filed, namely, the complaint.

The complaint is comparatively short and, as the Court found, completely devoid of any factual details to support its conclusory allegations. If in fact plaintiffs' counsel worked 300 hours and were only able to produce this "thin," conclusory complaint, this fact alone speaks volumes as to the lack of factual support for their claims. Obviously, if plaintiffs' counsel's investigation had uncovered any facts that supported their claims, those facts would have been alleged in the complaint. Alternatively, at the very least, plaintiffs' counsel would have made those facts known to this Court in some way in responding to defendants' motions to dismiss which specifically challenged the conclusory nature of the complaint (*e.g.*, by filing a proposed amended complaint or reciting some supporting factual details in their briefs or at oral argument). Therefore, even assuming that plaintiffs' counsel undertook the extensive investigation that they now claim, that is all the more reason to conclude that plaintiffs' counsel had no reasonable factual basis for filing this groundless lawsuit.

## II. *Plaintiffs Have Failed To Carry Their Burden Of Proving That Their Alleged Reliance On Information Allegedly Obtained From An Expert Consultant Was Reasonable.*

Plaintiffs cannot avoid sanctions simply by claiming that they consulted an unnamed expert and relied upon undisclosed information allegedly received from the expert. Plaintiffs have the burden of demonstrating that their reliance on the expert was reasonable under the circumstances. See, e.g., Coffey v. Healthtrust, Inc., 1 F.3d 1101, 1104 (10th Cir. 1993). In Coffey, the expert submitted his own affidavit in support of plaintiff's position, explained the basis of his opinion and was accepted as an expert by the court. In contrast, in this case, plaintiffs have offered no evidence to demonstrate that their reliance on the unnamed expert was reasonable. Indeed, all the evidence is to the contrary.

In their motions to dismiss, defendants challenged the factual basis of plaintiffs' complaint. In response, plaintiffs filed an expert's affidavit. Plaintiffs expressly stated that they were filing this expert's affidavit to respond to all of defendants' factual arguments "out of an abundance of caution."

> In response to defendants' numerous factual arguments, and out of an abundance of caution, plaintiffs have submitted the expert affidavit of John P. Lock, M.D. ("Lock Affidavit" attached hereto as Exhibit A.").

Plaintiffs' Opposition Brief at 4.

The Lock Affidavit did not support a single claim asserted by plaintiffs. To the extent Lock raised any questions regarding the safety or efficacy of any drug, he did so with respect to Niacin, not Niaspan -- the drug at issue in this case. Indeed, Lock's failure to offer any scientific evidence or even an educated opinion regarding the safety or efficacy of Niaspan was very telling. The only

reasonable inference was that Dr. Lock had no scientific evidence to dispute the findings of the FDA regarding the safety and efficacy of Niaspan.

Moreover, when the Court at oral argument asked plaintiffs' counsel to describe what support he had for the medical claims asserted in the complaint, plaintiffs' counsel could point to nothing. In fact, plaintiffs' counsel affirmatively stated: "I have done the best I can and alleged all I can under the circumstances." Transcript of Hearing, May 4, 1999, at 43.

Contrary to all the representations made in the case to date, plaintiffs' counsel now claim that some unnamed consulting expert provided information to them which supported the medical claims asserted in the complaint. Plaintiffs' counsel do not disclose the actual content of the communications that they allegedly received from the consulting expert. Therefore, we do not know what the so-called expert actually said or whether she had any basis for her alleged views. Instead, true to form, plaintiffs' counsel describe the information allegedly received from this unnamed expert in the same conclusory terms that they used in the allegations of the complaint.

What we do know is that the consulting expert was unwilling or unable to give an affidavit regarding any of her views. Plaintiffs assert that Dr. Lock corroborated the consulting expert's views. But he carefully avoided criticizing the safety or efficacy of Niaspan. We also know that plaintiffs' counsel did not refer to the consulting expert or any scientific fact that he allegedly learned from her in opposing defendants' motions to dismiss or answering this Court's questions at oral argument. The only reasonable inference to draw from all of these facts is that if the unnamed consulting expert provided any information to plaintiffs' counsel, at most that information amounted to nothing more than a hunch or suspicion regarding the safety and efficacy of Niaspan, not scientific data sufficient to dispute the FDA's findings.

Unsubstantiated hunches or suspicions of an "expert" cannot be an adequate basis on which to file a lawsuit, particularly where other scientists have reached contrary conclusions based upon scientific evidence, the FDA has confirmed the validity of those conclusions and all of the professional, peer-reviewed, scientific literature refutes the allegations of the proposed complaint. Otherwise, irresponsible claims could be asserted in federal litigation any time a lawyer could find a so-called expert willing to speculate that there might be a basis for those claims. In this case, that so-called expert was not even willing to come forward with an affidavit setting forth her views and the scientific basis, if any, for them. None of the cases cited by plaintiffs condone reliance on information from a so-called expert where, as here, all scientific evidence is contrary to the consulting expert's alleged views and plaintiffs have offered no evidence to show that it was reasonable to rely upon the alleged opinion of the expert under the circumstances.

In short, it is difficult to believe that some unnamed consultant said something that plaintiffs' counsel actually believed supported the allegations of their complaint but plaintiffs' counsel failed to include those facts in the complaint and withheld them from the Court in the course of the briefing and argument on defendants' motions to dismiss. In any event, the only reasonable inference is that whatever the unnamed consultant had to say, it amounted to nothing more than speculation unsupported by any scientific evidence and, therefore, could not possibly have furnished an adequate basis for filing this lawsuit.

### III. There Was No Reasonable Basis For Plaintiffs' Sales Claims.

As discussed above, the only claims asserted in the complaint regarding sales data in the Prospectus were based upon alleged affirmative misrepresentations, not omissions. Therefore, only the claims concerning affirmative misrepresentations are the subject of the Underwriter Defendants' motion for sanctions.

One of the key affirmative misrepresentations alleged in the complaint was that the $1.5 million sales figure in the Prospectus was false. Complaint, ¶57. Characteristically, the complaint's allegations were conclusory and provided no basis for this claim. In their opposition to defendants' motions to dismiss and at oral argument, plaintiffs elaborated on this claim. Plaintiffs asserted that the revenue should not be recognized because the sales were not final but instead were subject to a right of return or were sold on consignment. For example, in their opposition briefs plaintiffs stated in pertinent part:

> In the Prospectus Kos 'estimated' that in the fiscal quarter ended September 30, 1997, its sales from Niaspan would be $1.5 million.... These statements were false when made because the Niaspan 'sales' reported by Kos were not sales at all. They were shipments of Niaspan to wholesalers which were either subject to a right of return, or shipped on a consignment basis.

Opposition Brief at 9.

At oral argument, plaintiffs' counsel addressed this same claim as follows:

> But wholesalers don't buy a brand new risky product. They don't want to be stuck with it either. They do it with a -- with an ironclad right of return, and that's what happened here.

Transcript of Hearing on May 4, 1999 at 39.

Plaintiffs have not even attempted to substantiate this claim in their response to Underwriter Defendants' motion for sanctions. As far as Underwriter Defendants know, there simply is no basis for this claim.

The other misrepresentation claim asserted in the complaint was that the Prospectus misleadingly implied that the $1.5 million sales figure pertained to prescription sales rather than sales to wholesalers. As the Court held in dismissing plaintiffs' complaint, even a cursory reading of the Prospectus made it clear that, if anything, the entire $1.5 million of sales were to wholesalers

and were not prescription sales.[2] This claim also was asserted without a reasonable basis. Order Granting Motion To Dismiss, May 19, 1999 at 21.

### IV. *The Underwriter Defendants' Attorneys Fees Are Reasonable.*

Plaintiffs complain that the amount of attorneys fees ($148,478) and costs ($20,234) sought by the Underwriter Defendants is excessive. Underwriter Defendants provided time and billing records (with privileged information redacted) to plaintiffs' counsel. Plaintiffs have not advanced any specific basis for asserting that the requested amount of sanctions is excessive. Indeed, if plaintiffs' counsel actually spent over 300 hours of work investigating this case before filing the complaint as they now claim, which supposedly does not include the time spent litigating this matter once the complaint was filed, they will be hard-pressed to dispute the reasonableness of the Underwriter Defendants' fees. These fees included investigation of the facts with respect to four separate underwriters, addressing issues raised by the motion to transfer and plaintiffs' premature demands for discovery and briefing and arguing the motion to dismiss. These fees represent approximately 560 hours of attorney time at an average billing rate of $265/hour. Plaintiffs have offered no evidence to dispute the reasonableness of the time spent or the average billing rate.

---

[2] The Prospectus (at 18) stated in pertinent part:

> On July 28, 1997, the Company was granted clearance by the FDA to market its lead product, Niaspan. *The Company began shipping Niaspan to wholesalers in mid-August 1997*, and it began detailing Niaspan [explained elsewhere in the Prospectus (pp. 25-26) as providing free samples] to physicians in September 1997. Accordingly, effective with its September 30, 1997 reporting period, Kos will no longer be classified as a development stage company. Based on preliminary, unaudited financial information, the Company estimates that during its fiscal quarter ended September 30, 1997, it had revenues of approximately $1.5 million and it incurred a net loss that was significantly higher than in previous quarters primarily due to increased expenses in connection with the launch of Niaspan. (Emphasis added.)

*Conclusion*

Plaintiffs claim to have spent over 300 hours investigating claims against the Underwriter Defendants before they decided to file their complaint. The conclusory nature of that complaint and plaintiffs' counsel's failure to offer any factual support for their claims in the course of briefing and arguing defendants' motions to dismiss make it clear that plaintiffs' counsel should not have filed this lawsuit after they finished their investigation. This is a classic example of the type of frivolous litigation that Congress intended to eradicate by the provisions of the Reform Act, particularly the sanctions provisions. Accordingly, the Underwriter Defendants ask the Court to grant their motion for sanctions in its entirety.

Of Counsel:

Robert J. Kriss, Esq.
MAYER, BROWN & PLATT.
190 So. La Salle Street
Chicago, IL 60603-3441
Telephone (312) 782-0600
Facsimile (312) 701-7711

Respectfully submitted,

HOULIHAN & PARTNERS, P.A.
2600 Douglas Road, Suite 600
Miami, FL 33134
Telephone (305) 460-4091
Facsimile (305) 460-4099

BY: _____
Julie A. Zahniser
Fla. Bar No. 0973981

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via overnight mail on September 3, 1999, to: Arthur T. Susman, Esq., Charles R. Watkins, Esq., and Robert J. Emanuel, Esq., Susman & Watkins, Two First National Plaza, Suite 600, Chicago, Illinois 60603; Atlee W. Wampler, III, Esq., Ricardo A. Banciella, Esq., 900 Sun Trust Building, 777 Brickell Avenue, Miami, FL 33131 and Tracy Nicholas, Esq., Holland & Knight LLP, 701 Brickell Avenue, P.O. Box 015441, Miami, FL 33101.

_____
JULIE A. ZAHNISER

\\ntserver\hpdocs\gjh\cowen\reply-sat.doc